PATRICK A. CASEY, P.A., Clifford C. Gramer, Jr. and Thomas A. Simons, IV, Plaintiffs–Appellees,

v.

Joel S. HOCHMAN, M.D. and Darrellyn S. Hochman, Defendants–Appellants.

No. 90–2154.

United States Court of Appeals,
Tenth Circuit.

May 8, 1992.

Stephen P. Curtis, of William F. Davis & Assoc., P.C., Albuquerque, N.M., for defendants-appellants.

Clifford C. Gramer, Jr., pro se, of Gerber, Gramer & Ahern, Sante Fe, N.M. (Patrick A. Casey, pro se, and Thomas A. Simons, IV, pro se, with him, on the brief), for plaintiffs-appellees.

Before HOLLOWAY and SETH, Circuit Judges, and DUMBAULD *, District Judge.

HOLLOWAY, Circuit Judge.

This appeal is taken from the district court's judgment affirming the bankruptcy court's order denying a discharge in bankruptcy to the defendants-appellants, Dr. Joel Hochman and Darrellyn Hochman (collectively "the Hochmans"). The only issue before us concerns whether a "Tamponator" invention, the patent therefor, and income therefrom, including payments due under a license agreement on the patent, are part of the bankruptcy estate.

I

On January 21, 1982, Dr. Joel Hochman, a psychiatrist, and his wife Darrellyn, a housewife, filed a Chapter 11 petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. Venue was subsequently transferred to the District of New Mexico.

The Hochmans acted as debtors-in-possession under Chapter 11 from January 21, 1982, until May 3, 1984, when motions of creditors to convert the bankruptcy into a Chapter 7 liquidation were granted. In the interim, Dr. Hochman had created the device in question in early 1983.[1] A specific finding to this effect was made by the bankruptcy judge, and this is not disputed.

---

* The Honorable Edward Dumbauld, Senior United States District Judge of the Western District of Pennsylvania, sitting by designation.

1. The bankruptcy judge found that the Tamponator was "described as a device for the development, training and rehabilitation of the pubococcygeal and related perineal musculature of the female." Memorandum Opinion of the Bankruptcy Court at 30.

At the time of conversion of the bankruptcy case to a Chapter 7 proceeding, Dr. Hochman had unsuccessfully attempted to have the device patented.

The bankruptcy judge made extensive subsidiary historical findings of fact. These findings are not specifically attacked. As noted, this appeal challenges only the ruling of the bankruptcy judge determining that the device, the patent and income from the licensing agreement were part of the bankruptcy estate, which ruling was affirmed by the district judge on appeal. Further facts relating to the device will be detailed below.

The original Chapter 11 proceeding was commenced by the Hochmans on January 21, 1982. Well after the 1984 conversion of the proceeding into Chapter 7, three scheduled creditors filed a complaint in July 1988 under 11 U.S.C. § 727. They objected to a discharge in bankruptcy of the Hochmans, alleging acts calculated to defraud creditors by the concealment and misappropriation of assets of the bankruptcy estate. After a five-day trial the bankruptcy judge found that the Hochmans intentionally concealed rents from a ranch and other properties and proceeds and the patent and license fees paid on the Tamponator device. These actions were found to be in violation of § 727 and a discharge in bankruptcy was denied by the bankruptcy judge.

The Hochmans appealed to the district court, arguing that they had not had a fair trial and that the bankruptcy judge erred in his ruling that the Tamponator was part of the bankruptcy estate, *inter alia*. The district judge rejected an argument that the trial in the bankruptcy court was unfair. He also held that the determination that the device was part of the bankruptcy estate was "not clearly erroneous." Memorandum Opinion and Order of the District Court at 2–3.

A notice of appeal to this court was timely filed. On this appeal the Hochmans raise only the issue concerning whether the Tamponator device, the patent, and income from the license agreement and other in-come related to the device are part of the Chapter 7 estate. This central argument is presented in two parts: (1) the Hochmans claim that the findings and consideration below as to whether the device was part of the bankruptcy estate were not adequate; and (2) the determination that the device, the patent, income from the license agreement and related income were part of the bankruptcy estate was error.

## II

### A.

The challenge to the sufficiency of the findings and the extent of consideration below of the principal issue is without merit. The bankruptcy judge made extensive findings concerning the creation of the device in early 1983 and the Hochmans' subsequent actions concerning the device. Memorandum Opinion of the Bankruptcy Court at 30. The Memorandum Opinion and Order of the district judge likewise directed specific comments to "The Patent Matter" and rejected the contention of the Hochmans that the Tamponator, the patent and the licensing agreement were not part of the bankruptcy estate.

Thus the findings and conclusions below respecting the device were not procedurally defective. They amply stated the basis for the rulings by the bankruptcy judge and the district court as well.

### B.

We turn now to the merits of the rulings that the Tamponator device, the patent, and income from the licensing agreement and related efforts of the Hochmans were part of the bankruptcy estate. The findings of the bankruptcy judge were stated in his opinion in detail and we summarize them below.

The Hochmans commenced the bankruptcy case in Chapter 11 on January 21, 1982. The bankruptcy judge found that when the debtors filed a motion for reconsideration of conversion of their case to Chapter 7, they explained to the court and creditors

that Dr. Hochman had obtained initial approval of a patent of a medical device "with an enormous income potential." The judge said that the transcript shows that Dr. Hochman knew and understood that the patentable medical device "was property of the estate." Memorandum Opinion and Order at 30. Significantly for our purposes, the judge found that "Dr. Hochman had created the device in early 1983." *Id.* Hochman filed a patent application, # 069740196, through a patent attorney on February 28, 1983. The patent office acted on the application on April 12, 1984, rejecting the sixteen claims and giving the debtors three months from April 12, 1984, to respond. The patent examiner noted that claims 11 through 15 were "free of the art of record." *Id.* at 31. The bankruptcy judge found that the Hochmans did respond to the patent office just prior to expiration of their deadline and that on May 7, 1985, Patent No. 40515167 was issued for the invention.

The bankruptcy judge found that the "invention known as the tampenator [sic] was property acquired by the debtors during the chapter 11 case and was property of the estate." *Id.* at 31–32. The patent application made on February 28, 1983, and the rights thereunder "were property acquired by the debtors during the case and were property of the estate." *Id.* at 32. The judge found that the debtors "knew that the invention and the patent were property of the estate" which they concealed. *Id.* at 32.

It was found that on July 23, 1984, 81 days after conversion to Chapter 7, Dr. Hochman entered into two agreements with Hancock, Newton & Thomas concerning the invention. Dr. Hochman signed a licensing agreement giving this group the right to license, manufacture, use, sell and commercialize the invention for a license fee of $150,000 and royalties equivalent to six per cent of the selling price of each licensed product. $5,000 had already been paid to Dr. Hochman. Dr. Hochman represented that he was owner of the patent and had the right to grant an exclusive license. The agreement provided that Dr. Hochman would do all things necessary to obtain letters patent. The license agreement had been contingent upon Dr. Hochman securing the patent by December 12, 1984.

The bankruptcy judge found that the debtors' actions in filing their Chapter 11 proceeding and in taking steps "on the way were motivated solely and exclusively by bad faith." *Id.* at 36. Among other findings concerning delaying and defrauding creditors, the bankruptcy judge found that "the debtors with intent to hinder, defraud or delay creditors of the trustee, transferred, removed or concealed United States Patent No. 069470196 [sic] [2] and the license fees and royalties therefrom." *Id.* at 36–37. The judge found the debtors fraudulently made one or more false oaths in their bankruptcy case by failing to list the patent and license fees therefrom and the licensing agreement. He also found that these findings were supported by clear and convincing evidence and that a discharge under 11 U.S.C. § 727 should be denied.

The district judge affirmed, not disturbing any of the bankruptcy judge's findings.

### C.

The defendants-appellants, Dr. and Mrs. Hochman, challenge the rulings below that the Tamponator device, the patent thereof, and payments on the licensing agreement were within the Chapter 7 bankruptcy estate. They argue that 11 U.S.C. § 541(a) provides that commencement of a bankruptcy case creates the estate; the estate is comprised of all legal and equitable interests of the debtor in property as of the commencement of the case; and that when a Chapter 11 case is converted to a Chapter 7 case, the original filing date of the petition under Chapter 11 establishes the commencement of the case and the basis for determining the assets comprising the

---

**2.** It appears that this reference was inadvertently made to the number of the original patent application; the patent which was issued was No. 40515167.

bankruptcy estate in accordance with 11 U.S.C. § 348(a). Appellants' Brief in Chief at 5–6. They say that § 348(a) makes it clear that the conversion to a Chapter 7 proceeding "does not effect a change in the date of the filing of the petition or the commencement of the case." *Id.* at 6.

Further the defendants-appellants argue that the appellees fail to address the question whether an asset was acquired by the estate or by the *debtors;* that the appellees have blurred the distinction between property acquired by the estate and by the debtor. Appellants' Reply Brief at 3–4. They conclude that since the device was invented in 1983, and the patent and payments in question followed, these were property acquired by the debtors. *Id.* at 4.

■ We must agree. In these circumstances, upon conversion the assets which are the property of the Chapter 7 estate are determined with reference to the date of filing of the original Chapter 11 petition. *See In re Magallanes,* 96 B.R. 253, 255 (9th Cir. BAP 1988); *Matter of Gorski,* 85 B.R. 155, 156 (Bankr.M.D.Fla.1988); *In re Marshall,* 79 B.R. 147, 150 (Bankr.N.D.N.Y. 1987); *In re de Vos,* 76 B.R. 157, 160 (Bankr.N.D.Cal.1987); L. King, 2 *Collier on Bankruptcy* ¶ 348.02 (1992). The bankruptcy judge found that the device was invented in early 1983 by Dr. Hochman. This finding is not questioned and there is no suggestion by the appellees that the device existed earlier. This was a year *after* the commencement of the first bankruptcy proceeding on January 21, 1982, with the filing of the Chapter 11 case. The basic rule is laid down by 11 U.S.C. § 541(a):

(a) The commencement of a case under section 301, 302, or 303 [voluntary, involuntary, and joint cases] of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debt-

or in property *as of the commencement of the case* . . . .

11 U.S.C. § 541(a) (emphasis added).

The effect of § 541(a) is clearly stated in L. King, 4 *Collier on Bankruptcy* ¶ 541.05 at 541–24:

As previously stated, under section 541(a) the estate is normally comprised only of property and interests therein belonging to the debtor at the time the petition is filed. In general, property not then owned but subsequently acquired by the debtor does not become property of the estate, but becomes the debtor's, clear of all claims that are discharged by the bankruptcy proceedings.

The basic principles stated in the treatise are clearly recognized in decisions under the Bankruptcy Act. In *Everett v. Judson,* 228 U.S. 474, 479, 33 S.Ct. 568, 569, 57 L.Ed. 927 (1913), the Supreme Court stated:

We think that the purpose of the law was to fix the line of cleavage with reference to the condition of the bankrupt estate as of the time at which the petition was filed and that the property which vests in the trustee at the time of adjudication is that which the bankrupt owned at the time of the filing of the petition.

*See also TVA v. Kinzer,* 142 F.2d 833, 838 (6th Cir.1944); *In re Jensen,* 200 F.2d 58, 60 (7th Cir.1952), *cert. denied,* 345 U.S. 926, 73 S.Ct. 785, 97 L.Ed. 1357 (1953); *In re Scranton Knitting Mills,* 23 F.Supp. 803, 804–05 (M.D.Pa.1938).

The appellees argue that there is substantial evidence to support the finding of the bankruptcy court that the invention acquired by the debtors during the Chapter 11 case and the patent application made were property of the bankruptcy estate, and that fees paid under the license agreement were proceeds and profits of the invention and patent application and thus also property of the bankruptcy estate. Appellees' Answer Brief at 11. They cite *United States v. Whiting Pools,* 462 U.S. 198, 205, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983), and *In re Continental Airlines, Inc.,* 61 B.R. 758, 778 (Bankr. S.D.Tex.1986). However, the cases afford

no support to the appellees. In *Whiting Pools*, the Court dealt with the inclusion in a reorganization estate of property made available to the estate by other provisions of the Bankruptcy Code; it did not change the test of looking to commencement of the case. *Id.* at 205–06, 103 S.Ct. at 2313–14. Section 541 "is properly viewed as a 'definition of *what is included in the estate* rather than as a limitation.'" *Continental Airlines,* 61 B.R. at 778 (emphasis added) (quoting *Whiting Pools,* 462 U.S. at 201, 103 S.Ct. at 2311).

The appellants place their reliance on § 541(a)(6) and (7) as making the device, the patent and proceeds property of the Chapter 7 bankruptcy estate. Appellees' Answer Brief at 9. Those subsections provide, *inter alia,* for inclusion in the estate of

> (6) Proceeds, product, offspring, rents, and profits of or from property *of the estate,* except such as are earnings from services performed by an individual debtor after the commencement of the case.

> (7) Any interest in property that *the estate acquires* after the commencement of the case.

11 U.S.C. § 541(a)(6) and (7) (emphasis added). The argument of the appellees confuses property acquired by the debtors and property acquired by the *estate.* In this connection we note that the bankruptcy judge made a finding that the "invention known as the Tamponator was property acquired by the debtors during the chapter 11 case and was property of the estate." The judge further found, as noted, that Dr. Hochman developed the invention in 1983. We are persuaded that the facts found clearly establish that the device, the patent and proceeds from the licensing agreement were property acquired by the debtors, but we do not agree with the judge's conclusion that they were "property of the estate."

The appellees argue that property acquired post-petition is generally within the bankruptcy estate and that there are only two exceptions to this rule, those provided by § 541(a)(6) concerning proceeds, product, rents and profits from property *of the estate.* They also point to the 180–day limitation in § 541(a)(5) which places in the estate an interest in particular types of property (inheritances, property settlements, etc.) that would have been property of the estate if such interest had been an interest of the debtor on the date of filing of the petition, and if the debtor acquires or becomes entitled to it within 180 days after such date. The appellees simply have the general rule backwards; under § 541(a)(1) the general rule is that the estate includes interests of the debtor in property as of the commencement of the case. Both of these provisions relied on (§ 541(a)(5) and (6)) are actually exceptions from the general rule that post-petition acquisitions are property of the debtor—exceptions specially provided to include particular property within the bankruptcy estate.

### IV

In sum, while the findings, conclusions and the ruling underlying the denial of discharge in bankruptcy to the Hochmans are not shown to be in error otherwise, the ruling concerning the right of the estate to the Tamponator device, the patent and proceeds from the license agreement was in error. Accordingly, the judgment of the district court insofar as it affirms the ruling of the bankruptcy court that the device, the patent and the revenue from the license agreement are part of the bankruptcy estate are REVERSED; in all other respects the findings, conclusions and judgment affirming the bankruptcy court's denial of the discharge of the defendants-appellants are undisturbed. The case is REMANDED for proceedings in accord with this opinion.